Good morning, your honors. May it please the court, counsel. My name is Joanna Christensen and I represent Mr. Lynn, the defendant appellant in this case. We're raising three issues this morning. I'll address the trial issues first. The first one being the admission of NCLEX records, which is a precursor accounting system used by pharmacies to assist law enforcement in tracking who purchases Sudafed and other cold medicines that are used to make methamphetamine and how much they purchase. These records were admitted by the government as business records and objected to by trial counsel prior to trial as a violation of Crawford v. Washington. The progeny of Crawford, which includes Melendez Diaz and then Bull Cumming v. New Mexico, makes it clear that these were records that should have been presented by a witness who is subject to there's no business records exception to the Confrontation Clause, which is what Bull Cumming held even when the witness would be a mere scrivener as the pharmacy technician in these cases usually is. Ms. Christensen, at least one court has concluded that NCLEX logs are kept in the ordinary course of business under state law. If the NCLEX logs are intended to promote public welfare by shutting down meth labs and may have some value to that end of trial, that doesn't necessarily make them testimonial under Crawford, does it? I think it does under Bull Cumming. I think that they're for the sole use of law enforcement. And the reason for that is that the only reason that these records are kept is to see if meth, I'm sorry, pseudoephedrine purchases are within the law. So the... Are you, let's see, are you suggesting that the only purpose of the NCLEX logs is for admission at trial akin as to how a preparing evidence for use at trial? Is that your argument? It's the same process as it was in Bull Cumming, yes. That's my argument. And I think as in Bull Cumming, it does come under the reach of the Confrontation Clause. And it's being processed... That Mashek case out of the Eighth Circuit. I am familiar with that case. I think that is a violation that doesn't follow the letter of the law. I think that they didn't look at the reason for these records is because they're testimonial to be admitted in court as to who's purchasing methamphetamine. I'm sorry, pseudoephedrine and how much. They also directly go to Count 2, which was the conspiracy to possess pseudoephedrine in this case. So it's not even that it's an extra step that they're going to be made into methamphetamine. This was a conspiracy to possess in Count 2 pseudoephedrine. And it's direct evidence of that. Yeah, but although the logs may be helpful at trial, they're not necessarily prepared specifically for use in a trial or court setting such that they would be testimonial settings, it seems to me. I see very little application for the records that are not in a court setting. The purpose is to see if people are violating the laws regarding purchases of pseudoephedrine. And we believe that that is exclusively for the use of law enforcement and in court. The website that gathers this information specifically says that it's for the purpose of law enforcement. Well, you know, the netflix logs seem to be simply general logs of pseudoephedrine purchases that may, and I guess I underscore the word may, ultimately prove invaluable at a later unspecified trial. Not prepared, as I said a few minutes ago, specifically for use in a trial. Anyway, I have your argument, so go ahead. Okay, thank you. I'll move on to the demonstrative evidence. I think these two go together when we're talking, particularly when it comes down to I want to back up just a minute. Oh, I'm sorry. You didn't object to that at trial. The demonstrative evidence? The records. Not at trial. There was a motion filed prior to trial. And we do address in our... But don't we have cases that say you've got to renew it? Yes, we do have cases saying we have to renew it. As I addressed in the reply brief, I think it's hard to apply those cases, which were where no objection was made at all. And then to this case, where an objection was made at trial. I understand this court's case law. However, it's based on this concept of sandbagging the district court and the government to a certain extent by holding on to objections until appeal. And that certainly wasn't the case in this case. There was an objection. There was a written objection that brought forward Crawford and Bullcoming and all these cases. And it just wasn't ruled on, and then it wasn't renewed at trial. And in some respects, I agree with the government's statement that in the end, it comes down to whether it's plain error or harmless error, because it still can be harmless error. So the issue can be addressed. And I'm not sure there's a huge difference between plain error and harmless error at that point. The same goes for the demonstrative evidence, except for there was no objection at trial. And it would come down to definitely plain error on the demonstrative evidence. And our issue with that, just shortly, is the fact that this evidence, the video of the shake and bake method, was so completely different than what actually occurred in the case that it was prejudicial to Mr. Lynn at trial. But the jury had already seen photographs from the basement and heard quite a bit of other testimony pointing to his guilt, hadn't they? I'm not sure I understand how showing the video of that shake and bake method for manufacturing meth would make it more likely that he would be convicted. I think it makes it look more dangerous because of the setting in which the video is done. And it's completely different than the way it was done in this case. And one of the cases cited by the government is a rollercoaster ride that was produced in some fashion that's unclear from the case at trial. But everybody kind of agreed that it was similar to what the issue was at trial. This one wasn't similar. And when we're talking about this kind of evidence, it is prejudicial to hear testimony about how a basement shake and bake plastic bottle tubing meth lab works versus a chemistry laboratory meth lab would work with a professional with all the safety equipment, underscoring how dangerous this process is. So I did want to move on to the career offender aggravated battery issue. The career offender in this case, like in so many others, just launched Mr. Lynn's guideline range. It's three times higher because of the career offender, based on two convictions, both for aggravated battery while in a two prongs of the career offender. Of course, the residual clause prong, the government says they're not asserting, but we obviously would be successful if we get there based on Hurlburt on that prong. But we are arguing the first prong of career offender, that there's no element of physical force in a conviction under 12-438. And the issue that we think that this court and other courts who have looked at this type of offense stems from the fact that they start with a simple battery analysis under 12-3A, moving into 12-4. Mr. Lynn was not convicted of 12-3A, of simple battery. He was convicted under the statute that says it's aggravated battery if he or the person battered is on or about a public way. There is no element of physical force in this crime. Reading into, pulling into, from the battery elements, which has two of course, the force prong and the insulting touching prong, for lack of a better word, is not what Mr. Lynn was convicted of. Not what he was convicted of, the battery on a public way. Mathis was actually instructive in this case, which came after I filed my original brief. It came in time for the reply brief. In that, those are the elements. The aggravated battery, those are the elements. The battery, simple battery, is whether it's insulting touching or physical force, are means. And the reason I can argue that is because it doesn't matter for the punishment under 12-4B8, whether Mr. Lynn was convicted of a bodily harm battery or an insulting touching battery. The punishment is the found by the jury beyond a reasonable doubt, either way, because he's not convicted of 12-3A. Have you located a case where the charging documents or jury instructions did not specify whether the underlying battery caused bodily harm or was simply an insulting contact? I've not seen that, no. No. I think, you know, to discuss aggravated battery, acknowledge that the aggravated battery statute requires both simple battery plus the presence of one of the aggravating factors that's listed on that aggravated battery subsection. And that means that either bodily harm or insulting contact battery has to be proven for conviction. I think if you look at the way that 12-4 is written, that the legislature, if they had wanted bodily harm to be an element, actually put that in the statute. For example, 12-4A is a person who committed battery causes great bodily harm in subsection 15, or B-15, regarding a merchant causes bodily harm. So if they had wanted bodily harm to be an element of aggravated battery, they actually put it in the subsection. And I realize this court has held in several cases that aggravated battery is a crime of violence under career offender purposes. I think that this analysis is the offense of conviction is structured. And the element has to be, you're not arguing that Illinois' aggravated battery statute as a whole, which covers everything from causing bodily harm or disfigurement to strangling, is not itself indivisible for purposes of determining whether conviction is a crime of violence under 4B1.2, are you? With all the subsections? No. All those subsections, those are divisible. But this court held in Evans, I believe, that the public... I'm sorry, pregnant woman was indivisible. The battery against a pregnant woman was indivisible. And then they adopted that in Johnson. This court's Johnson. There are a lot of Johnson cases involved in these cases today. And found that that pregnant woman analysis extended to the public way analysis, and it was indivisible. It's quoted at length, I believe, in my reply brief, that that subsection is indivisible because that's a separate offense from the other subsections. And we're arguing it's a separate offense from simple battery as well. That simple battery just provides the means to prove the battery element in aggravated battery. So unless there are further questions, I'm into my rebuttal time, and I will cede the podium to the government. Thank you. Thank you. Leggings? Good morning, Your Honors. My name is Tom Leggings, and I was the trial counsel below. This was kind of... It was a very... I hesitate to say small. It was a very short case in terms of actual trial time. I think the case was put on in six or seven hours of total time for evidence. You know, Mr. Leggings, I'm going to just put something right out there. Because I would very much like the government to supplement the record on appeal with two things, with Lynn's indictment and with his aggravated battery convictions. I was very surprised that the record didn't include any of that, because I think it's very important here. I mean, it's really important to the sentencing. I will do that, Your Honor. And if you want me to get into the sentencing argument at this point, I can certainly do that. No, no. You go ahead with your sentence. I just wanted to get it out so I didn't forget. And I assume you mean his indictment from the state proceedings? I would like to see the state proceeding indictment, the federal indictment, and the aggravated battery convictions, the judgment. Yeah, I really would like to see all that. I think it's problematic that none of that's in the record. And when I get to that portion of my argument, I'll explain where I'll go into why that is. But to briefly go through the trial errors, or at least to go through the issues as counsel presented them earlier, the government's evidence in this case was... It's kind of a unique case. We have a case where the defendant in this case calls the county sheriff at three o'clock in the morning at home and tells him, I just left a place where I've been smoking meth. Yeah, and I'm wondering why he's the only defendant then charged in federal court. The other defendants were convicted in state court, pled guilty, convicted in state court, and all of them ultimately agreed to cooperate, although we only called two of them. Was he offered a cooperation agreement, or can you not answer that? Actually, that was part of it. We put on the record. Judge Gilbert's procedure to have us, when we go to trial, to put on the record whether any plea deals were extended and rejected, and that is part of the record. We did extend a plea deal to the defendant, which was rejected, and we went to trial on it. On the inplex records, I concur with your honor's analysis of those, is that these are not solely used for testimonial purposes at criminal trials. These are part of the Illinois administrative scheme for tracking pseudo ephedrine purchases, and they're maintained for that purpose. They're maintained so that people can be blocked from purchasing more pseudo ephedrine than they're supposed to. So they're not only for testimonial purposes under Crawford. The more problematic thing, I think, for the defendant is that this is being reviewed in a plain air context. The government gave notice that they were going to use these records. The defendant replied to that notice, and then at trial, there was no objection. Now, there's a reason, I believe, why there was no objection. One is, this particular defendant went through six point appointed counsel. The court appointed counsel who filed their notice that they were objecting to the use of this information was not the same court appointed counsel who actually proceeded to trial. And if you look at the record, the court appointed counsel who actually proceeded to trial intended all along to affirmatively use these records as part of his defense, and he did use them as part of his defense. These implex records did not show that the defendant was purchasing pseudo ephedrine pills. It showed that other people, the other people in the conspiracy were purchasing the pills, and the defense in this case, as it actually went to trial, was that, yeah, there were people who were producing methamphetamine, but the defendant, my client, wasn't part of it. And you can tell he wasn't part of it if you look at these pseudo ephedrine logs. And you can... This was not only the defendant's defense after all the evidence came in, this was the defense he announced in his opening statement. He said in his opening statement, you're gonna see these pseudo ephedrine logs, and they're gonna show that my guy wasn't purchasing pseudo ephedrine. So, not only do you have the fact that these were not testimonial, layered on top of that, you have that it wasn't prejudicial to the defendant. In fact, they were affirmatively used by the defendant as part of his defense. So, you cannot show under... Mr. Leggins, because you don't have a lot of time, and because there's a very difficult issue in the case regarding the causes bodily harm prong of the Illinois Battery Statute, I wonder if you would help us with that. Because in the briefs, you seem to suggest that Lynn bears the burden of proof to demonstrate that he was charged under the causes bodily harm prong. And although, of course, he has to demonstrate error and prejudice because we are reviewing for plain error, it is the government's burden to show that the underlying state conviction was indeed for a qualifying crime, independent of what the PSR recounts about it. And in the briefs, because the PSR refers to knowingly causing bodily harm, you suggest that we can know that Lynn was convicted under the bodily harm prong of the portion of the statute that defines simple battery. But what evidence is... Which way the defendant commits battery is actually an element of aggravated battery, which itself requires only a battery on a public way. And if you understood all that, I'll be very pleased. I'll do my best, Your Honor. I think the bottom line question is, this is coming to this court on plain error review. And on plain error review, this court has said repeatedly that on these types of issues, on an issue, on Johnson issues, on Taylor issues, for lack of a better word, for these issues where we're trying to decide whether or not a prior conviction is a qualifying one for enhancement purposes, on plain error review, if a defendant is going... If the court makes a finding that they are qualifying, it is the defendant's burden on plain error review to show that they are not qualifying. And I made that note, and getting back to your earlier request to have the government submit the materials, I note in a footnote that I have those materials. That's not a problem. If this objection would have been raised at sentencing, I would have presented the evidence that would have shown that his prior convictions were qualifying under . . . Well, you know, I have wondered and wondered in this case if it was common to seek a career enhancement adjustment under 4B1.2A1 without attaching the underlying record of conviction. I mean, you know, you suggest that we do not have the underlying documents because Lynn failed to object. But you bore the burden, the government bore the burden at sentencing to prove his eligibility for the enhancement, didn't you? And the way that typically, the way that burden is discharged is if the PSI will make a finding, the parties will either, will file objections to the PSI or they will not file objections to the PSI. And if they don't file objections to a particular section of the pre-sentence investigation report, then what is represented in there is accepted as true by the district court. In other words, there was an explicit admission. Yes. By the defense. There was a provision in the PSI that said he qualifies as a career offender because of these prior convictions. He didn't object to that. If he would have objected to that and if he would have said, hey, those prior convictions don't qualify, I had the convictions. I could have shown the court. You know, this was a bodily harm prior conviction under Illinois state law, but they didn't object to that provision in the PSI, so no one, so it wasn't proved up, for lack of a better word. It was accepted as having been proved. I'll be very interested to hear how, what Ms. Christensen has to say about this. Yeah. The, but that's the, that's the way it played out. And as I said, I, I had the prior Illinois state convictions for aggravated battery. I, I make reference to them in a footnote. If this court would like to see them, please feel free to, and I'll supplement the record with them if I'm ordered to do so. And so I'm, I'm actually, it is, it is no burden to, for your honor to ask me to do that. Just so it's clear, Judge Rovner wanted it and the court orders it. Okay. And I will, I will do that as soon as I get back to, to Southern Illinois, your honor. The, I guess, and to, to, to wrap this up, the, under this court's precedent, starting with Hill versus Vorlinger and, and, and moving forward, the, the resolution of this sentencing issue is pretty much predisposed. And, and Mathis does not change this court's analysis in Hill versus Vorlinger. An, an aggravated battery conviction on a public way, when it's premised on the bodily harm prong of the Illinois battery statute, is a qualifying conviction for purposes of the career offender provision in the defense. The defense does not, they did not address Hill in their, in their opening brief. They did not address Hill in their, in their reply brief, after I mentioned it six or seven times. So, it is our position that Hill versus Vorlinger is, is binding precedent in this court. And Mathis doesn't change the analysis of that. And if there are no further questions, I will yield. Well, I'll, I'll just add this. I don't, that, I mean, if, if Lynn hadn't been classified as a career offender under 4B1.1, he would have faced a guideline range of 57 to 71 months, instead of the 210 to 262 month range. So, although the 192 months that he, that was imposed upon him was below the higher range, without that enhancement, Lynn's guideline range would have been amazingly significantly lower. That is correct, Your Honor. It's sort of a very troubling case on, on a number of levels. You know, here's a guy that calls in, confesses, and you know, he'll be in prison for a million years. Yeah. The and again, that's, that is that is not atypical of the operation of statutes, Your Honor. So I, I appreciate. No. Yeah. And if, if there are no further questions, Your Honor, I will yield the remainder of my time. Thank you. Thanks a lot. How much time? We'll see what I can do with one minute. I would like to comment on why the other defendants weren't charged. Mr. Lynn was offered to cooperate and plead guilty after he was charged in federal court. The other defendants were allowed to plead guilty in state court and I received and received very little time. I believe that's because Mr. Lynn was a career offender and the others were not. So I will address the career offender issues. What happened in this case with the guarding the records to prove the aggravated battery is pretty common. They are rarely attached and to the pre-sentence report, even though the probation officer usually has them, defense counsel usually has them, government counsel usually has them. I have them in this case. The prob, the problem is, is that the probation officer quotes directly from the indictment. You've got another two minutes. Okay, thank you. Not from the judgment and the indictment is not one of the records that we're it's divisible and we're arguing as this court found in Johnson and Evans that it's not divisible. So, um, as far as explicit admission to the pre-sentence report, I would always prefer that there was an objection to what I choose to raise on appeal. What I see as an objection. Well, it doesn't always happen, but that's, we have plenary review for those failure to object situations. If, if he had specifically said, we, you know, we're waiving this issue. We're not raising this issue. That's a waiver. And that would be more of an admission. This is forfeiture, more like the Jaime, Jaime case where defense counsel has no reason not to raise it. And then finally, with my time left, I think the problem is, is the way we think about this crime. Bodily harm, aggravated battery is not a crime in Illinois. Offensive touching, aggravated battery is not a crime in Illinois. Aggravated battery on a public way is a crime and it can be convicted, committed several different ways, but either way, no matter how you commit it, it's the same punishment for that crime. That's, I think the problem with Hill versus Wurlinger and what's addressed in Johnson versus Evans. And perhaps there is a tension there that this court needs to address aftermath. So unless there are further questions, I will. Thank you, counsel. Thanks to both counselors. The case is taken under advisement.